Filed 4/30/15

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JUAN JOSE VIZCARRA,<br><br>    Defendant and Appellant. | D065579<br><br><br><br>(Super. Ct. No. JCF25950) |

APPEAL from a judgment of the Superior Court of Imperial County, Christopher J. Plourd, Judge. Affirmed and remanded with directions.

Buckley & Buckley and Christian C. Buckley, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Elizabeth M. Carino, Deputy Attorneys General, for Plaintiff and Respondent.

INTRODUCTION

Defendant Juan Jose Vizcarra challenges the sentence imposed on him following his prior appeal. In this gang-related and procedurally complicated stabbing case—which

returns to this court following a nonpublished opinion in Vizcarra's prior appeal in *People v. Vizcarra* (May 22, 2013, D061878) (*Vizcarra I*) and the resulting remand to the trial court with directions to conduct a limited resentencing—a jury convicted Vizcarra, who was a member of the Chicali Brazas (Chicali) criminal street gang in Brawley, of two felonies: (1) assaulting Jesus Zermeno with a deadly weapon, a knife (count 2: Pen. Code, § 245, subd. (a)(1)) (undesignated statutory references will be to the Penal Code); and (2) attempting to dissuade a witness, Zermeno (count 3: § 136.1, subd. (a)(2), hereafter § 136.1(a)(2)). The jury found Vizcarra not guilty of attempting to willfully, deliberately, and with premeditation murder Zermeno (§§ 187, subd. (a), 664) as charged in count 1.

In addition, the jury found to be true a count 2 allegation that Vizcarra committed the assault with a deadly weapon for the benefit of, at the direction of, or in association with a criminal street gang (§ 186.22, subd. (b)(1)). In a bifurcated proceeding, the court found to be true a count 2 allegation that Vizcarra had suffered a strike prior (§ 667, subds. (b)-(i)).

The court originally sentenced Vizcarra in this case to an aggregate prison term of 15 years consisting of (1) the upper term of four years for his count 2 conviction of assault with a deadly weapon, doubled to eight years under the Three Strikes law as a result of the court's true finding on the count 2 strike prior allegation; plus (2) a consecutive term of two years for his count 3 conviction of attempting to dissuade a victim or witness, which the court did not double under the Three Strikes law; plus (3) a consecutive five-year term for the gang enhancement.

2

Before we set forth Vizcarra's contentions in this new appeal, and in order to provide necessary procedural context, we must briefly discuss his first appeal and the limited resentencing hearing that we directed the trial court to conduct on remand.

A. *Vizcarra's First Appeal* (*Vizcarra I*, *D061878*)[1]

In *Vizcarra I*, Vizcarra challenged on various grounds his count 3 conviction (dissuading a witness) and his sentence. As pertinent here, the Attorney General responded by arguing that Vizcarra's total prison term sentence should be increased by seven years—from 15 years to 22 years—because (1) the court was required, but failed, to double to four years under the Three Strikes law the two-year sentence it imposed for Vizcarra's count 3 conviction of attempting to dissuade a victim or witness, and (2) the court also was required, but failed, to impose a consecutive five-year prior serious felony conviction enhancement under section 667, subdivision (a)(1) (hereafter section 667(a)(1)) (discussed, *post*).

In his reply brief, Vizcarra acknowledged that the court erroneously failed to double under the Three Strikes law the two-year sentence it imposed for his count 3 conviction. However, relying on *People v. Henderson* (1963) 60 Cal.2d 482 (*Henderson*) (and other legal authorities), Vizcarra asserted that, "[u]nder California law, after appeal a defendant may not receive a greater sentence on [the] charges for which he was tried in the first trial." He also asserted that "California double jeopardy and due process

---

[1] We take judicial notice of the record on appeal filed in this court in *Vizcarra I*, as well as of this court's unpublished opinion in that matter. (Evid. Code, §§ 451, subd. (a), 452, subd. (d), 459, subd. (a).)

3

principles generally forbid such an increased sentence." Thus, Vizcarra claimed, his sentence could not be increased lawfully following his appeal because his original 15-year aggregate sentence was "within the range of permissible sentences" the trial court was legally authorized to impose, and the court "could have reached a legal sentence of [15] years, even with the correction of the alleged errors."

In this court's unpublished opinion in *Vizcarra I*, rejecting Vizcarra's claims, we concluded that the trial court erred and rendered an unauthorized sentence by (1) failing to impose a mandatory five-year enhancement under section 667(a)(1), and (2) failing to double under the Three Strikes law the two-year sentence it imposed for Vizcarra's count 3 conviction. Accordingly, we modified the judgment by ordering imposition of a consecutive five-year enhancement under section 667(a)(1), reversed the sentence as to count 3, and remanded this case "for resentencing subject to the court's exercise of its section 1385, subdivision (a) power to strike the prior conviction finding." In all other respects, we affirmed the judgment as modified.

This court thereafter denied Vizcarra's petition for rehearing. On August 21, 2013, the California Supreme Court denied his petition for review (*People v. Vizcarra*, S211630).

B.  *Resentencing on Remand*

On remand in mid-January 2014, the trial court conducted a limited resentencing hearing in accordance with this court's directions in *Vizcarra I*. In the exercise of its discretion, the court denied Vizcarra's motion under section 1385, subdivision (a) (hereafter section 1385(a)) and *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497

4

(*Romero*) to strike his prior strike conviction, and it then imposed the new sentence. As to count 3, the court imposed the term of two years, doubled to four years under the Three Strikes law as a result of Vizcarra's strike prior. The court sentenced Vizcarra to an aggregate prison term of 22 years, consisting of his original 15-year sentence, plus the mandatory five-year enhancement under section 667(a)(1) that this court in *Vizcarra I* ordered imposed for his serious felony prior, plus the additional two years resulting from the doubling under the Three Strikes law of the original two-year term imposed as to count 3.

C. *Vizcarra's Contentions*

Vizcarra again appeals, raising two main contentions. First, he contends the seven-year increase in his aggregate prison sentence—from 15 to 22 years—following his first appeal is illegal as a matter of law, and he asserts his 22-year sentence must be reduced to 15 years. Second, he contends the court abused its discretion in resentencing him on remand "by failing to complete a full sentencing analysis and by relying on improper sentencing considerations."

For reasons we shall explain, we reject these contentions and affirm the judgment. However, we remand the matter with directions to amend the new abstract of judgment to correct two clerical errors (discussed, *post*) the Attorney General has correctly pointed out.

## FACTUAL BACKGROUND[2]

Vizcarra, whose Chicali gang moniker was "Shorty," stabbed Zermeno─who was affiliated with a rival street gang─twice in the ribs with a knife, causing him to suffer a collapsed lung. Zermeno was hospitalized for about two weeks. At the time of the assault, Vizcarra was accompanied by Jeffrey Ruiz, whose Chicali gang moniker was "Speedy" and who testified at trial that he saw Vizcarra stab Zermeno.

While in custody, Vizcarra made three phone calls: one to his fellow Chicali gang member, Fernando Flores, and the others to Chicali gang associates Carlos Angulo and Walter Lopez. Specifically, in the first phone call, Vizcarra called Angulo. Vizcarra told Angulo: "Ask for [Zermeno], man. Find him, man. Do that favor for me, man, and tell him that when he goes to court to say, 'No.' You know what I mean?" Angulo replied, "Yes." After briefly discussing something else, Vizcarra told Angulo: "Hey, but─try to find that damn Jesus Zermeno, man. All right?" Angulo responded, "All right, then."

In the second phone call, Vizcarra called Lopez and asked him for a "favor." Vizcarra asked Lopez whether he knew Zermeno, and Lopez indicated he did not. Vizcarra explained, "Uh, well the fucker is saying . . . Supposedly, that he is snitching, man." Lopez said, "Really?" Lopez then told Vizcarra, "Wait, hold on, I'm going to write that shit down, man." Vizcarra spelled Zermeno's name for Lopez, who then said he would "see what's up." After informing Lopez that he (Vizcarra) was being charged with attempted murder, Vizcarra told Lopez: "That's why I want you to [stutters] do that

---

[2]    The following summary of the underlying facts in this case is taken from this court's unpublished opinion in *Vizcarra I*.

favor for me, man."  Lopez responded affirmatively.  Vizcarra then said, "Find that

fucker, man," adding, "We got court on Monday, fool."  Lopez replied, "All right, fool."

Vizcarra then gave instructions to Lopez about what Zermeno should say in court:

> "And then, well, if you can get a hold of him before Monday it
> would be great, man.  And just tell him that if he is going to go to
> court, man, to just say that it wasn't us.  You know what I mean?
> That he should say, 'No—.'"

Interrupting Vizcarra, Lopez replied, "Yeah."  Vizcarra added that Zermeno

should say, "[I]t's the wrong people.'"  Lopez indicated he would do this favor for

Vizcarra.

In the third phone call, Vizcarra called Flores, whom he called "Flako."  Vizcarra

asked Flores whether he knew Zermeno, and Flores replied he did not.  Vizcarra told

Flores, "[I]f [Zermeno] goes to court he should say, 'No.'  You know what I mean, man?"

Flores replied, "Yes."  Vizcarra added, "That it wasn't us, dog."  Flores responded, "Yeah,

I know.  I know."  Vizcarra further explained that he "already told [Lopez]" and that

Lopez had written down Zermeno's name.  Flores confirmed Zermeno's name and told

Vizcarra he had written down Zermeno's name.  Vizcarra then told Flores:  "All right,

dog.  Just figure that shit out, dog.  All right? . . . Do that favor for me, man."  Flores

reassured Vizcarra, saying, "Yeah, don't trip." (1CT 226)!

Zermeno, the victim in this case, testified for the prosecution that, on the night in

question, two Hispanic men speaking in Spanish and brandishing knives ran towards him

and one stabbed him twice in the ribs.  At trial, Zermeno indicated that he did not know

the identity of the men, and he could not identify Vizcarra as the person who stabbed him.

DISCUSSION

I. *SEVEN-YEAR INCREASE IN VIZCARRA'S PRISON SENTENCE*

Vizcarra claims the seven-year increase in his aggregate prison sentence—from 15 to 22 years—following his first appeal in *Vizcarra I* is illegal as a matter of law, and his 22-year sentence must be reduced to 15 years. The Attorney General argues that Vizcarra's claim is barred by the doctrines of collateral estoppel and law of the case. We conclude those doctrines bar relitigation of Vizcarra's claim in this new appeal but expound the reasons why we rejected the claim in *Vizcarra I*.

A. *Doctrines of collateral estoppel and law of the case*

The California Supreme Court has explained that "[c]ollateral estoppel precludes relitigation of issues argued and decided in prior proceedings. [Citation.] Traditionally, we have applied the doctrine only if several threshold requirements are fulfilled. First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding. [Citations.] The party asserting collateral estoppel bears the burden of establishing these requirements." (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341 (*Lucido*), fn. omitted.)

8

"[T]he law-of-the-case doctrine 'prevents the parties from seeking appellate reconsideration of an already decided issue in the same case absent some significant change in circumstances.' [Citation.] The doctrine is one of procedure, not jurisdiction, and it will not be applied 'where its application will result in an unjust decision, e.g., where there has been a "manifest misapplication of existing principles resulting in substantial injustice' [citation]." (*People v. Boyer* (2006) 38 Cal.4th 412, 441 (*Boyer*).)

B. *Analysis*

Relying principally on *People v. Henderson*, *supra*, 60 Cal.2d 482, *People v. Mustafaa* (1994) 22 Cal.4th 1305 (*Mustafaa*), and *People v. Torres* (2008) 163 Cal.App.4th 1420 (*Torres*) as he did in *Vizcarra I*, Vizcarra renews in this second appeal the *same* claim he asserted in *Vizcarra I* that his sentence could not lawfully be increased following his first appeal because his original 15-year aggregate sentence was within the range of sentences the trial court was *legally authorized* to impose and a 15-year sentence "could have been imposed in a legal manner on remand" even with correction of the sentencing errors. Vizcarra acknowledges he "raised this issue in the prior appeal in his reply brief and at oral argument." The Attorney General asserts, and Vizcarra does not dispute, that "[t]his identical claim was also raised in [Vizcarra's]

petition for rehearing in this court,[3] and in his petition for review in the California Supreme Court,[4] both of which were denied."

In *Vizcarra I*, rejecting Vizcarra's claim, this court concluded that the trial court erred and rendered an unauthorized sentence by (1) failing to impose a mandatory and nondiscretionary five-year enhancement under section 667(a)(1), and (2) failing to double under the Three Strikes law the two-year sentence it imposed for Vizcarra's count 3 conviction. As Vizcarra's claim was necessarily rejected in *Vizcarra I*, and our decision in that case is final, the doctrines of collateral estoppel and law of the case bar him from relitigating this claim in this new appeal. (*Lucido*, *supra*, 51 Cal.3d at p. 341; *Boyer*, *supra*, 38 Cal.4th at p. 441.)

Although this court did not expound its reasons for rejecting Vizcarra's claim in *Vizcarra I*, application of the law-of-the-case doctrine does not lead to an unjust result. (See *Boyer*, *supra*, 38 Cal.4th at p. 441 [law-of-the-case doctrine will not be applied where its application will result in an unjust decision].) As noted, Vizcarra asserted his claim in *Vizcarra I* in his reply brief, at oral argument, and in his petition for rehearing. Vizcarra was afforded ample opportunity to argue this issue in his prior appeal and, as he

---

3    The record in *Vizcarra I*, of which we take judicial notice, shows Vizcarra raised this same claim in his petition for rehearing.

4    As noted, *ante*, the California Supreme Court denied Vizcarra's petition for review (*People v. Vizcarra*, S211630) on August 21, 2013.

has not shown any significant change in circumstances, adherence to the law of the case in *Vizcarra I* will not result in an unjust decision.

Application of the law-of-the-case doctrine (like application of the doctrine of collateral estoppel) does not lead to an unjust result for the additional reason that, under well-established law, Vizcarra's claim is unavailing on the merits. (See *Boyer*, *supra*, 38 Cal.4th at p. 441 [law-of-the-case doctrine will not be applied where there has been a manifest misapplication of existing principles resulting in substantial injustice].)

"Section 1238 'governs the People's appeals from orders or judgments of the superior courts. [Citation.] Subdivision (a)(10) of section 1238 provides that the People may appeal from '[t]he imposition of an unlawful sentence,' and defines an 'unlawful sentence' as 'the imposition of a sentence *not authorized by law* or the imposition of a sentence based upon an unlawful order of the court which strikes or otherwise modifies the effect of an enhancement or prior conviction.'" (*People v. Trujillo* (2006) 40 Cal.4th 165, 172, fn. omitted, italics added.) When a trial court pronounces a sentence that is unauthorized by law, the People may raise the point on defendant's appeal as they did here. (See *People v. Benton* (1979) 100 Cal.App.3d 92, 102 (*Benton*); *People v. Cabral* (1975) 51 Cal.App.3d 707, 718 (*Cabral*).)

Under the general rule of state constitutional law that the California Supreme Court has referred to as the *Henderson* rule, "[w]*hen a defendant successfully appeals a criminal conviction*, California's constitutional prohibition against double jeopardy precludes the imposition of more severe punishment on resentencing." (*People v. Hanson* (2000) 23 Cal.4th 355, 357 (*Hanson*), citing *Henderson*, *supra*, 60 Cal.2d at pp.

11

495-497, italics added;[5] see *People v. Solórzano* (2007) 153 Cal.App.4th 1026, 1040 (*Solórzano*) ["If a defendant *successfully challenges his or her conviction on appeal and secures a new trial*, the due process and double jeopardy clauses of the California Constitution generally prohibit the imposition of a harsher sentence *after retrial*." (Italics added.)].) The *Henderson* court explained that the rationale for this general rule is two-fold: "[T]he state has no interest in preserving erroneous judgments" (*Henderson,* at p. 497), and "[a] defendant's right of appeal from an erroneous judgment is unreasonably impaired" (*ibid.*) if he or she risks "more severe sentence *on retrial*." (*Id.* at p. 497, italics added; see *People v. Collins* (1978) 21 Cal.3d 208, 216 ["'a defendant should not be required to risk being given greater punishment *on a retrial* for the privilege of exercising his right to appeal'" (italics added)].)

However, in *People v. Serrato* (1973) 9 Cal.3d 753, 764 (*Serrato*), disapproved on another point in *People v. Fosselman* (1983) 33 Cal.3d 572, 583, the California Supreme Court "set out an exception to this general [*Henderson*] rule." (*People v. Price* (1986) 184 Cal.App.3d 1405, 1409.) In *Serrato*, after discussing the *Henderson* rule, the Supreme Court explained that "[t]he rule is otherwise when a trial court pronounces an *unauthorized sentence*. Such a sentence is subject to being set aside judicially and is no

---

5    In *Hanson* the Supreme Court explained that the *Henderson* defendant "secured reversal of his murder conviction for which he had been sentenced to life in prison. Following retrial, he was again convicted of murder but was sentenced to receive the death penalty. On appeal, he argued the increased punishment violated the state's prohibition against double jeopardy, and this court agreed." (*Hanson*, *supra*, 23 Cal.4th at p. 358, fn. omitted.)

bar to the imposition of a proper judgment thereafter, *even though it is more severe than the original unauthorized pronouncement*." (*Serrato*, at p. 764, italics added.) In reaffirming the *Serrato* exception to the *Henderson* rule, our high state court stated in *In re Ricky H.* (1981) 30 Cal.3d 176, that "[a]uthority exists for an appellate court to correct a sentence that is *not authorized by law* whenever the error comes to the attention of the court, *even if the correction creates the possibility of a more severe punishment*." (*Id.* at p. 191, italics added.)

In *People v. Massengale* (1970) 10 Cal.App.3d 689 (*Massengale*), the Court of Appeal explained that "such a correction of the judgment is not a penalty imposed upon appellants because of their appeals. The rationale of [*Henderson*, *supra*], 60 Cal.2d 482, forbidding increased punishment *after a reversal and second trial*, does not apply. The correction in the judgment[] . . . would be required whenever the mistake was discovered, *regardless of whether . . . [the] defendant[] had appealed*." (*Id.* at p. 693, italics added; accord, *Cabral*, *supra*, 51 Cal.App.3d at p. 718.)

It is well-established in California by a long line of decisional authority (discussed, *post*) that a trial court's failure either (1) to pronounce sentence on a statutory sentence enhancement allegation based upon a finding by the trier of fact or an admission by the defendant that the allegation is true, or (2) to exercise its discretion—to the extent imposition of the enhancement is discretionary—to either strike the enhancement allegation or impose the enhancement, results in an unauthorized sentence. Under the *Serrato* exception to the *Henderson* rule, as already explained, such an unauthorized sentence is subject to correction by an appellate court "whenever the error comes to the

13

attention of the court, even if the correction creates the possibility of a more severe punishment."  (*In re Ricky H.*, *supra*, 30 Cal.3d at p. 191.)

For example in *Benton*, *supra*, 100 Cal.App.3d 92, which was decided in 1979, the Court of Appeal held that the defendant's aggregate four-year state prison sentence was "unauthorized by law" because the defendant had admitted five charged prior felony convictions and the trial court was required to impose an additional consecutive one-year prison term for each prior conviction pursuant to section 667.5, subdivision (b) (hereafter section 667.5(b)), but the trial court erroneously "(1) failed to pronounce judgment on all five priors and (2) stayed all but two years of [the defendant's] prison term, without justification."  (*Id.* at pp. 100-101.)  Concluding that "[t]he record [did] not support [defendant's] contention that it was the trial court's intent to mitigate the additional punishment" (*id.* at p. 102), the *Benton* court remanded the cause to the trial court with directions to either "strike the additional punishment upon finding circumstances in mitigation and stating on the record its reasons therefor [or] impose sentence on the priors in the manner provided by law."  (*Id.* at p. 103.)

In *People v. Price*, *supra*, 184 Cal.App.3d 1405, decided in 1986, the defendant was convicted of four sex offenses and two robberies, and sentence enhancement allegations that he personally used a weapon in committing all of the crimes were found to be true.  (*Id.* at p. 1407.)  At the original sentencing, the trial court imposed an aggregate prison term of 35 years.  (*Id.* at p. 1407.)  On defendant's first appeal, the Court of Appeal affirmed his convictions but remanded the cause for resentencing because the trial court had erroneously stayed imposition of the weapon enhancement as to two of the

14

counts and failed to even mention the weapon enhancement as to another count. (*Id*. at p. 1411.) The trial court at resentencing imposed a more severe 50-year aggregate prison term. (*Id*. at p. 1407.) The defendant appealed again, claiming the double jeopardy clause of the California Constitution barred the trial court at resentencing from imposing a greater prison term than he originally received. (*Id*. at p. 1408.) Rejecting that claim but reducing the new sentence to a 47-year prison term for reasons not pertinent here, the *Price* court—citing *Serrato*, *supra*, 9 Cal.3d 753 and *Benton*, *supra*, 100 Cal.App.3d 92—concluded that the original sentencing court's erroneous "failure . . . to impose [the] weapon enhancements" (*Price*, at p. 1409) as to two counts and its failure to pronounce sentence regarding the enhancement as to another count "produced an *unauthorized sentence*" (*id.* at p. 1412) that "[could] be rectified on remand." (*Price*, at p. 1411, italics added.) "Consequently," the *Price* court explained, "*the sentencing court on remand had the power to impose a harsher term and was correct in doing so*." (*Id*. at p. 1412, italics added.)

In *People v. Irvin* (1991) 230 Cal.App.3d 180 (*Irvin*), the trial court sentenced the defendant to an aggregate prison term of 16 years, which the defendant challenged on appeal. (*Id*. at p. 188.) The Court of Appeal—agreeing with the Attorney General and citing *Benton*, *supra*, 100 Cal.App.3d 92 and *Price*, *supra*, 184 Cal.App.3d 1405—concluded that the trial court had erroneously failed to either impose a one-year prior prison term enhancement (§ 667.5(b)) or strike it pursuant to cited statutory authority not pertinent here. (*Irvin, at pp. 188-189.*) The *Irvin* court held that "the failure to impose the one-year enhancement or to strike it . . . resulted in a sentence *unauthorized*

15

*by law* and . . . the case should be remanded so that the court may make a proper sentencing choice." (*Id.* at p. 190, italics added.) In a *limited remand*, the *Irvin* court ordered the trial court "to determine whether to impose a one-year enhancement sentence pursuant to section 667.5[(b)], or to strike the enhancement finding pursuant . . . ." (*Id.* at p. 193.)

In *People v. Dotson* (1997) 16 Cal.4th 547, 550 (*Dotson*), which is of particular relevance here, the trial court found to be true an allegation that the defendant had suffered four prior serious felony convictions within the meaning of section 667(a)(1), the five-year sentence enhancement statute at issue in the present appeal.[6] At sentencing the trial court did not impose a separate determinate term of 20 years for the four five-year enhancements and sentenced the defendant to an aggregate prison term of 26 years to life. (*Dotson* at p. 551.) The Court of Appeal modified the judgment in certain respects not pertinent here, and the California Supreme Court granted the Attorney General's petition for review in which the Attorney General argued for the first time that

_____

[6]    Section 667(a)(1) then provided in part, as it does today: "[A]ny person convicted of a serious felony who previously has been convicted of a serious felony . . . shall receive, in addition to the sentence imposed by the court for the present offense, a five-year enhancement for each such prior conviction on charges brought and tried separately. The terms of the present offense and each enhancement shall run consecutively."

As this court explained in *Vizcarra I*, "[u]nder section 667(a)(1)], when the defendant is convicted of a current serious felony . . . and has been previously convicted of a serious felony, the trial court *must* impose a five-year enhancement for each such prior conviction that was brought and tried separately. The terms of the present offense and each section 667(a)[(1)] enhancement must run consecutively." (*Dotson*, *supra*, 16 Cal.4th at p. 553, italics added, fn. omitted.) "*The trial court has no discretion* and the sentence is mandatory." (*People v. Purata* (1996) 42 Cal.App.4th 489, 498.)" (Italics added.)

16

the four five-year section 667(a)(1) enhancements should be imposed as a separate determinate term. (*Dotson* at pp. 551, 554 & fn. 6.) The Supreme Court agreed, citing *In re Ricky H.* (*supra*, 30 Cal.3d 176) and *Serrato* (*supra*, 9 Cal.3d 753) for the proposition that "[a] claim that a sentence is *unauthorized* . . . may be raised for the first time on appeal, and is subject to judicial correction whenever the error comes to the attention of the reviewing court." (*Dotson*, at p. 554, fn. 6, italics added.) The *Dotson* court reversed the judgment of the Court of Appeal and directed that court to remand the case to the trial court for resentencing. (*Id.* at p. 560.)

In *People v. Bradley* (1998) 64 Cal.App.4th 386 (*Bradley*), a jury convicted the defendant of forgery and a related offense, and found he had previously served four prior prison terms within the meaning of section 667.5(b), the applicable sentence enhancing statute. (*Bradley*, at p. 390.) In sentencing the defendant to an aggregate prison term (the total years of which is not discussed in the published portion of the Court of Appeal's opinion), the trial court imposed three of the four one-year prior prison term enhancements but did not indicate the disposition as to the fourth enhancement. (*Ibid*.) On defendant's appeal, the Attorney General argued the trial court erred in failing to impose the fourth one-year section 667.5(b) enhancement. (*Ibid*.) Citing *Irvin*, *supra*, 230 Cal.App.3d 180 and *Mustafaa*, *supra*, 22 Cal.App.4th 1305─and noting that "section 667.5[(b)] enhancements are subject to the exercise of the trial court's discretion to strike pursuant to section 1385[(a)]"─the Court of Appeal explained in *Bradley* that "[t]he *failure to impose or strike an enhancement is a legally unauthorized sentence* subject to correction for the first time on appeal." (*Bradley*, at p. 391, italics added.) Citing the

17

Supreme Court's decision in *Dotson*, *supra*, 16 Cal.4th 547, the *Bradley* court concluded that the trial court's "refusal to sentence was *legally unauthorized*." (*Bradley*, at p. 392, italics added.) Again citing *Irvin*, *supra*, 230 Cal.App.3d at page 193, the Court of Appeal remanded the cause to the trial court for what it referred to as a "limited resentencing" (*Bradley*, at p. 391) and directed the trial court to "either impose or strike the prior prison term enhancement . . . in compliance with California law." (*Id.* at p. 401.)

Two other more recent cases are relevant here. In *People v. Morales* (2003) 106 Cal.App.4th 445 (*Morales*), which is directly on point (as we explained in *Vizcarra I*), a jury convicted the defendant of committing three felony counts of annoying or molesting a child, as charged in the amended information. (*Id.* at p. 447.) The jury found the defendant had suffered two prior violent felony convictions of child molestation that were strikes under the Three Strikes law (§§ 667, subds. (b)-(i), 1170.12). (*Morales*, at p. 447.) The trial court struck one of the two prior strike findings in the interest of justice (§ 1385(a)) and, in sentencing the defendant, doubled under the Three Strikes law the prison term it imposed for the count 2 conviction, as required by sections 667, subdivision (e)(1) and 1170.12, subdivision (c)(1). (*Morales*, at p. 447.) However, because the information did not allege the prosecution was seeking enhanced recidivist sentencing under the Three Strikes law as to counts 1 and 3, the trial court did *not double* the sentences it imposed as to those two remaining counts. (*Id.* at pp. 447, 455.) The Court of Appeal reversed the sentence as to those counts and remanded the matter for resentencing, holding that "once the jury found defendant had previously been convicted

18

of a violent felony, the sentence as to *all* counts should have been doubled pursuant to sections 667, subdivision (e)(1) and 1170.12, subdivision (c)(1), subject to the trial court's exercise of its section 1385, subdivision (a) power to strike the prior conviction finding." (*Morales*, at pp. 447-448, italics added.)

In *Solórzano*, *supra*, 153 Cal.App.4th 1026, which was decided in 2007 and is also on point, a jury convicted the defendant at his first trial of four counts of second degree robbery and found true all but one of numerous sentencing enhancement allegations. (*Id.* at p. 1029.) As pertinent here, the jury found true an allegation in each of the four counts that the defendant had suffered a prior serious felony conviction within the meaning of section 667(a)(1). (*Solórzano*, at p. 1029.) At the original sentencing, the trial court imposed an aggregate sentence consisting of four consecutive indeterminate prison terms of 25 years to life plus a determinate term of *six years eight months*. (*Id.* at p. 1040.) In imposing that aggregate sentence, the trial court imposed only one of the four five-year section 667(a)(1) enhancements. (*Solórzano*, at pp. 1040, 1041.) On the defendant's first appeal, the Court of Appeal reversed his convictions and remanded the cause for a new trial. (*Id.* at p. 1029.) At the second trial, a jury again convicted the defendant of four counts of second degree robbery and found to be true all of the sentence enhancement allegations, including the four section 667(a)(1) allegations. (*Solórzano*, at p. 1029.) At resentencing the trial court imposed a harsher aggregate sentence consisting of four consecutive indeterminate prison terms of 25 years to life plus a determinate term of *23 years*, which included a 20-year determinate term for the four mandatory and consecutive five-year prior-serious-felony-conviction enhancements under section 667(a)(1).

19

(*Solórzano*, at p. 1040.)  The defendant again appealed, claiming the due process and double jeopardy clauses of the California Constitution prohibited the imposition of a sentence harsher than his original sentence.  (*Id*. at p. 1039.)  Rejecting that claim, the *Solórzano* court held that the trial court's error at the original sentencing in failing to impose three of the four five-year enhancements under section 667(a) "created a sentence that was *not legally authorized*" (*Solórzano*, at p. 1041) and, thus, the *Serrato* exception to the *Henderson* rule "applie[d], *allowing the imposition of a harsher sentence after retrial*."  (*Ibid*.)

Here, under the *Serrato* exception to the *Henderson* rule and the foregoing decisional authorities, the trial court's two errors at the original sentencing—i.e., failing to impose the mandatory, consecutive and nondiscretionary five-year enhancement under section 667(a)(1) and failing to either double to four years Vizcarra's two-year count 3 sentence or let the two-year sentence stand after exercising its discretion under section 1385(a) to strike the strike prior on remand as to that count—resulted in a sentence that was *not authorized by law* and thus was subject to correction in *Vizcarra I* even though at resentencing on remand "the correction create[d] the possibility of a more severe punishment" (*In re Ricky H*., *supra*, 30 Cal.3d at p. 191).  Such correction of the judgment was *not*, as Vizcarra contends it was, a penalty imposed upon him because of his first appeal.  The correction would have been required by law "whenever the mistake was discovered, *regardless of whether . . .* [*Vizcarra*] *had appealed*" and, thus, "[t]he rationale of [*Henderson*, *supra*], 60 Cal.2d 482, forbidding increased punishment after a reversal and second trial, does not apply."  (*Massengale*, *supra*, 10 Cal.App.3d at p. 693,

20

italics added; accord, *Cabral*, *supra*, 51 Cal.App.3d at p. 718.) The *Henderson* rule does not apply for the additional reason that none of the verdicts in this case was reversed in *Vizcarra I*. (See *Hanson*, *supra*, 23 Cal.4th at p. 357 ["When a defendant successfully appeals a criminal conviction, California's constitutional prohibition against double jeopardy precludes the imposition of more severe punishment on resentencing."], citing *Henderson*, *supra*, 60 Cal.2d at pp. 495-497; *People v. Burbine* (2003) 106 Cal.App.4th 1250, 1258-1259 ["[C]ase law holds that, based on double jeopardy and due process, the aggregate prison term imposed for all of the surviving counts cannot be increased on remand after a partial reversal, a circumstance appellant does not contend occurred here."].)

Vizcarra's reliance on *Torres*, *supra*, 163 Cal.App.4th 1420 and this court's decision in *Mustafaa*, *supra*, 22 Cal.App.4th 1305 is unavailing. *Torres* is legally and factually distinguishable and has no application here. In that case a jury convicted the defendant of one count of attempting to dissuade a witness and one count of issuing a criminal threat, and as to each count it found a gang enhancement allegation to be true. (*Torres*, at p. 1421.) At sentencing the trial court struck the gang enhancement allegations, imposed what it believed was the upper state prison term of *seven* years for the criminal threat conviction after relying on the People's claim that seven years was the aggravated term, and imposed but stayed the middle term for the conviction of attempting to dissuade a witness. (*Id*. at p. 1427.) Neither the defendant nor the People appealed. (*Id*. at pp. 1421-1422.) More than a year later, "the Department of Corrections and Rehabilitation sent a letter to the trial court asking for clarification of the defendant's

21

sentence because the sentence imposed was higher than that allowed by the sentencing triad applicable to the underlying conviction." (*Id*. at pp. 1422, 1427.) The trial court recalled the sentence under section 1170, subdivision (d) (hereafter section 1170(d)), ordered that the defendant be brought back to court, and—at resentencing—refused to strike the gang enhancements and then imposed a harsher indeterminate sentence of life in prison with the minimum term of seven years. (*Torres*, at pp. 1421, 1428.) The defendant appealed. (*Id*. at p. 1422.) The Court of Appeal affirmed the defendant's convictions but remanded the cause for resentencing, concluding that the trial court "erred in imposing a sentence of seven years to life after it *recalled* defendant's sentence of seven years in prison" (*id.* at p. 1433, italics added) and stating that "[o]n remand, the trial court may not impose a total sentence greater than seven years in prison." (*Ibid*.) The *Torres* court explained that "when a sentence is *recalled* [under section 1170(d)], the court may resentence the defendant as if he or she had not previously been sentenced, *with the limitation that the new sentence may not exceed the initial sentence*." (*Torres*, at pp. 1428-1429, italics added.) Explaining that "[t]he one unauthorized component of the sentence originally imposed by the court was not lenient—it was in fact more severe than that authorized (the correct upper term for count 3 being three years rather than seven)" (*id.* at p. 1432), the *Torres* court concluded that the aggregate sentence of seven years imposed at the original sentencing hearing was "not a legally unauthorized lenient sentence." (*Ibid*.)

*Torres* is distinguishable in that, unlike the present case, it involved a recall by the trial court of the original sentence under section 1170(d), which provides for resentencing

22

subject to "the limitation that the new sentence may not exceed the initial sentence." (*Torres*, *supra,* 163 Cal.App.4th at pp. 1428-1429.)  *Torres* is also distinguishable in that the original aggregate sentence *included* an unauthorized component—the seven-year term that exceeded the statutory upper term of three years—whereas, here, the original aggregate sentence was unauthorized because it *did not include* a mandatory, nondiscretionary, consecutive five-year enhancement (§ 667(a)(1)) and the trial court failed to either double an imposed prison term (i.e., the count 3 two-year term) under the Three Strikes law or strike the defendant's strike prior and allow that punishment to stand. Thus, unlike the original sentence in the present case, the original sentence in *Torres* was not unauthorized within the meaning of the *Serrato* exception to the *Henderson* rule.

Mustafaa* is distinguishable because in that case, as this court explained, the trial court "imposed a legal aggregate sentence, only fashioning it in an unauthorized manner" (*Mustafaa, supra,* 22 Cal.App.4th at pp. 1311-1312) by separating the defendant's three robbery convictions from their attached personal gun-use enhancements and imposing *consecutive* sentences for the enhancements but imposing *concurrent* sentences for the robbery convictions to which they were attached.  (*Ibid*.)  Thus, the *Serrata* exception to the *Henderson* rule did not apply in *Mustafaa*.  (*Ibid*.)

In the present case, the fact that the trial court at the original sentencing *theoretically* could have imposed an aggregate 15-year sentence as an authorized sentence does not mean that the 15-year sentence the court *actually* imposed at the original sentencing was an authorized sentence.  For reasons we have explained, the 15-year sentence the court imposed at the original sentencing was an unauthorized sentence

23

within the meaning of the *Serrato* exception to the *Henderson* rule because (1) the court erroneously failed to impose a mandatory, consecutive, and nondiscretionary five-year enhancement under section 667(a)(1) based upon the finding that Vizcarra had suffered a prior serious felony conviction; and (2) the court also erroneously failed to either double the count 3 two-year prison term under the Three Strikes law or strike Vizcarra's strike prior and allow that punishment to stand.

For all of the foregoing reasons, we reject Vizcarra's claim that the seven-year increase in his aggregate prison sentence—from 15 to 22 years—following his first appeal in *Vizcarra I* is illegal as a matter of law.

## II. *CLAIM THAT THE COURT ABUSED ITS DISCRETION DURING RESENTENCING*

Vizcarra also contends the court abused its discretion in resentencing him on remand "by failing to complete a full sentencing analysis and by relying on improper sentencing considerations." Specifically, he complains that, "[o]n remand, the trial court was singularly focused on the decision of whether to double [his] Count 3 sentence" and that "[t]he court did not consider whether to modify any other aspect of the sentence." Vizcarra's contention is unavailing.

### A. *Background*

#### 1. *Remand for resentencing*

In *Vizcarra I*, as already discussed, we affirmed Vizcarra's convictions of counts 2 and 3 and the true findings on various enhancement allegations, but we found the original 15-year aggregate sentence was unauthorized for reasons we explained, corrected the judgment to impose the mandatory, nondiscretionary and consecutive five-year prior

24

serious felony enhancement (§ 667(a)(1)), reversed his consecutive count 3 two-year sentence, and remanded this case for resentencing. As pertinent here, the remand language in the disposition portion of our opinion directed the court, as follows, to conduct a resentencing "subject to the court's exercise of its section 1385[(a)] power to strike the prior conviction finding" as to count 3:

> "As a result of the trial court's erroneous failure to double under the Three Strikes law the two-year sentence it imposed for Vizcarra's count 3 conviction (§ 136.1(a)(2)), his count 3 sentence is reversed, and *the matter is remanded to the trial court for resentencing subject to the court's exercise of its section 1385[(a)] power to strike the prior conviction finding*. The judgment is also modified to impose under section 667, subdivision (a)(1), a five-year consecutive term for Vizcarra's serious felony prior conviction." (Italics added.)

On remand the trial court conducted a new sentencing hearing on January 17, 2014. Defense counsel argued that the court in the exercise of its discretion should strike Vizcarra's prior strike conviction "as to Count 3 [(dissuading a witness)] only" in the interest of justice pursuant to section 1385(a) and *Romero*, *supra*, 13 Cal.4th 497. Defense counsel asserted that when Vizcarra "was originally sentenced," the court and the prosecutor "thought that a 15-year sentence was fair and just." Asking the court not to "pile on" by doubling the original count 3 sentence (to four years) under the Three Strikes law, defense counsel also asserted that Vizcarra was "stuck with the additional five years [under section 667(a)(1)] on top of what we all thought was a fair and just sentence," and thus dismissal of the strike prior would be in the furtherance of justice.

25

Noting it understood that Vizcarra "would be looking at 15 years right now" had he not appealed, the court responded, "I know I have *Romero* discretion," and added, "I'm very familiar with what the discretion is and what criteria I should look at."

In opposing Vizcarra's *Romero* motion to strike his prior strike, the prosecutor argued that in the statement in aggravation that the People filed for the initial sentencing, "they were very specific and clear . . . that [Vizcarra] deserves the maximum sentence allowed by law, and we gave reasons." She then summarized the reasons why Vizcarra "falls within the intent and purpose behind the [Three Strikes] law." First, she argued, "he had a prior strike conviction for robbery in 2009, which is what was found by the Court to be true." Next, she argued, Vizcarra "was convicted [in another specified case of] assault with a deadly weapon, which is the case he picked up . . . while he was in custody on this case." Then, she asserted, "[y]ou have this current case that happened in 2010, a stabbing with a knife." The prosecutor told the court, "So you have three very violent crimes within a very short period of time, which demonstrates the fact that [Vizcarra] does not have any regard for human life, is not remorseful, [and] continues to act out in a very violent nature." She then argued that, "[f]or the safety and protection of the public, this Court should follow the [L]egislature's lead and double the term as to Count 3."

Reminding the court that Vizcarra was convicted in count 3 of attempting to dissuade a witness, the prosecutor also argued there was "a collateral impact of [Vizcarra's] conduct as to Count 3." She stated "[t]here was evidence at trial that demonstrated that [Vizcarra] made calls while in the jail to dissuade the victim" and "the

26

victim actually was in fear."  She further explained that the victim attempted to commit suicide "just prior to his testimony at trial" as a result of Vizcarra's conduct.  The prosecutor urged the court to "exercise your discretion under [section 1385(a)] to double [the two-year] Count 3 [sentence]."

Defense counsel argued in rebuttal that the "lack of notice" regarding a doubling of the count 3 sentence under the Three Strikes law violated Vizcarra's constitutional rights, and this factor should be considered in determining whether to dismiss the strike prior in the interest of justice under section 1385(a) and *Romero*.

The court responded that it could not consider the notice issue "because the Court of Appeal has essentially already done that."  The court stated that "the case ha[d] been remanded by the Court of Appeal to exercise my discretion under *Romero* whether to double Count 3" and indicated it was required to follow certain criteria in exercising its discretion.

In exercising its discretion under section 1385(a) and making its resentencing decision, the court stated, "I looked at everything."  Specifically, the court stated it "looked at the probation report," recalled the details of the trial and Vizcarra's conduct and the circumstances regarding his current offenses, and reviewed this court's *Vizcarra I* opinion that "brought to light all of the facts and circumstances" surrounding count 3.

Referring to Vizcarra's strike prior as it related to his count 3 conviction of attempting to dissuade a witness, the court stated that, "had it been alleged at the time, *I would have doubled the sentence.  There is no doubt about that*."  (Italics added.)

27

On the issue of whether it should double the two-year term it originally imposed for Vizcarra's count 3 conviction, the court considered the nature and circumstances surrounding the offense, noting it "still remember[ed] the details of the intimidation," which was "persistent" in that Vizcarra had made "several different calls" in "trying to get out from this very serious stabbing where the victim could have very easily been killed." Recalling the trial evidence pertaining to the attempted murder charge alleged in count 1, of which Vizcarra was acquitted, the court observed that Vizcarra was "very fortunate he didn't get convicted" of attempted murder, and stated, "I think that the reason for that was that this [multiple stabbing of the victim] was a rash and impulsive act on his part."[7]

The court also considered Vizcarra's prior record, noting that he had "a number of very serious charges in his life." The record showed that Vizcarra "was in custody when this occurred" and "[h]e was still entrenched and significantly in gang activity while he was in custody."

The court denied Vizcarra's *Romero* motion to strike the prior strike, stating, "I don't see any basis to not impose the doubling of the sentence under [the Three Strikes law]." The court doubled the count 3 two-year prison term to four years and imposed an aggregate sentence of 22 years in prison.

---

[7]    As we explained in *Vizcarra I*, the evidence showed that Vizcarra stabbed the victim twice in the ribs with a knife, causing him to suffer a collapsed lung and to be hospitalized for about two weeks.

B. *Analysis*

"On remand with directions, after a judgment on appeal, the trial court has jurisdiction only to follow the directions of the appellate court; it cannot modify, or add to, those directions." (*People v. Oppenheimer* (1965) 236 Cal.App.2d 863, 865-866 [on remand, trial court had jurisdiction only to entertain a new application for probation].)

Here, in *Vizcarra I* we reversed the sentence as to count 3 and remanded this case "for resentencing subject to the court's exercise of its section 1385, subdivision (a) power to strike the prior conviction finding."[8] On remand, the trial court recognized the limited scope of the new sentencing hearing. It correctly determined that the limited scope of its jurisdiction on remand precluded it from modifying other aspects of Vizcarra's sentence beyond count 3.

As noted, Vizcarra contends the court abused its discretion in resentencing him on remand "by failing to complete a full sentencing analysis and by relying on improper sentencing considerations." Relying principally on *Torres*, *supra*, 163 Cal.App.4th 1420, *People v. Hill* (1986) 185 Cal.App.4th 831, and *Burbine*, *supra*, 106 Cal.App.4th 1250,

---

[8] In a footnote we explained that "[a] trial court may dismiss prior felony conviction allegations in cases prosecuted under the Three Strikes law when dismissal is 'in furtherance of justice.' (§ 1385, subd. (a); see [*Romero*, *supra*,] 13 Cal.4th [at pp.] 529-530.) In deciding whether to dismiss prior conviction allegations, the court 'must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.' (*People v. Williams* (1998) 17 Cal.4th 148, 161.)"

he complains that, "[o]n remand, the trial court was singularly focused on the decision of whether to double [his] Count 3 sentence" and that "[t]he court did not consider whether to modify any other aspect of the sentence." We reject Vizcarra's contention. *Torres* and *Hill* are distinguishable because in each of those cases, unlike in the present case, the trial court *recalled* the defendant's sentence under section 1170(d). As *Torres* explained, "when a sentence is *recalled* [under section 1170(d)], the court may resentence the defendant *as if he or she had not previously been sentenced*, with the limitation that *the new sentence may not exceed the initial sentence*." (*Torres*, at pp. 1428-1429, italics added.)

Vizcarra's reliance on *Burbine* is also misplaced. In *Burbine* the Court of Appeal stated: "[W]e endorse the notion that trial courts are, and should be, afforded discretion by rule and statute to reconsider an *entire* sentencing structure in multicount cases *where a portion of the original verdict . . . has been vacated by a higher court*." (*Burbine*, *supra*, 106 Cal.App.4th at p. 1258, italics added.) Here, no portion of the original verdict has been vacated by a higher court. Furthermore, as already discussed, the courts in California have long approved limited remands for the correction of unauthorized sentences. (*Bradley*, *supra*, 64 Cal.App.4th at pp. 392, 401; *Irvin*, *supra*, 230 Cal.App.3d at p. 193; *Benton*, *supra*, 100 Cal.App.3d at pp. 102-103.)

We conclude Vizcarra has failed to show that the court on remand abused its discretion by by failing to complete a full sentencing analysis. Having reviewed the record we also conclude he has failed to demonstrate the court prejudicially abused its discretion by relying on impermissible factors. We note that during the hearing on

30

Vizcarra's *Romero* motion to strike the strike prior during resentencing, the court—referring to the strike prior as it related to his count 3 conviction of attempting to dissuade a witness—stated that, "had it been alleged at the time, *I would have doubled the sentence. There is no doubt about that*." (Italics added.) For all of the foregoing reasons, we affirm the judgment.

### III. *ABSTRACT OF JUDGMENT*

Once again we find errors in the abstract of judgment. The Attorney General requests that this court correct two errors in the new abstract of judgment. Specifically, the Attorney General asserts that, "[a]lthough the abstract of judgment indicates a total term of 22 years, it fails to reflect the doubled terms in counts 2 and 3. Accordingly, this court should correct the clerical errors in the abstract of judgment to accurately reflect the trial court's oral pronouncement."

We agree the new abstract of judgment should be corrected. The abstract correctly reflects that the court on remand resentenced Vizcarra to an aggregate prison term of 22 years. However, the court originally sentenced Vizcarra to the term of four years for his count 2 conviction of assault with a deadly weapon, doubled to eight years under the Three Strikes law as a result of the court's true finding on the count 2 strike prior allegation. On remand Vizcarra's eight-year count 2 sentence did not change, and, thus, the new abstract of judgment should reflect this count 2 sentence. Section "1." of the abstract, however, incorrectly reflects that Vizcarra was sentenced to a *four*-year prison term for his count 2 conviction. Accordingly, this portion of the abstract should be

31

corrected to reflect that Vizcarra was sentenced to a prison term of *eight* years for his count 2 conviction.

During resentencing the court imposed the consecutive term of two years for Vizcarra's count 3 conviction of attempting to dissuade a victim or witness, and doubled that term to *four* years under the Three Strikes law. Section "1." of the abstract, however, incorrectly reflects that Vizcarra was sentenced to a consecutive *two*-year prison term for his count 3 conviction. Accordingly, this portion of the abstract should be corrected to reflect that Vizcarra was sentenced to a prison term of *four* years for his count 3 conviction.

## DISPOSITION

The judgment is affirmed. The matter is remanded to the superior court with directions that it prepare a corrected abstract of judgment to reflect that (1) Vizcarra was sentenced to a prison term of *eight* years for his count 2 conviction, and (2) he was sentenced to a consecutive prison term of *four* years for his count 3 conviction. The

superior court is also directed to forward a certified copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation.


                                                                    NARES, J.

WE CONCUR:


BENKE, Acting P. J.


McDONALD, J.