Filed 8/24/22  P. v. Ramirez CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ARMANDO RAMIREZ,<br><br>    Defendant and Appellant. | B312908<br><br>(Los Angeles County Super. Ct. No. VA006667) |

APPEAL from an order of the Superior Court of Los Angeles County, Joseph R. Porras, Judge.  Affirmed.

Pensanti & Associates and Louisa Pensanti for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, and Chung L. Mar and Amanda V. Lopez, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Armando Ramirez (defendant) appeals from the trial court's denial of his petition for resentencing under Penal Code section 1172.6 (former Penal Code section 1170.95).[1] Defendant's trial jury was not instructed on either the felony murder doctrine or the natural and probable consequences doctrine, and we consider whether that means the trial court cannot have erred in denying the section 1172.6 petition.

## I. BACKGROUND

### A. *The Murder*[2]

On New Year's Day in 1991, a feud between members of the Varrio Norwalk and Chivas criminal street gangs erupted when a Varrio Norwalk member entered Chivas territory and shot a member of the Chivas gang. Defendant—a member of the Chivas gang—and fellow gang member Anthony Lupe Chavez (Chavez) met with other Chivas members and discussed going to Varrio Norwalk territory to shoot a Varrio Norwalk member in retaliation.

Defendant and Chavez stole a car and drove into Varrio Norwalk territory, with Chavez armed with a shotgun. They drove by a park known to be a gathering point for Varrio Norwalk members. Varrio Norwalk member Jordy Rodriguez (Rodriguez) saw defendant and shouted "Norwalk!" Defendant yelled

---

[1]     Undesignated statutory references that follow are to the Penal Code.

[2]     The background summary of the offense conduct is drawn from the opinion resolving defendant's direct appeal. (*People v. Ramirez* (Dec. 14, 1993, B071160) [nonpub. opn.].)

2

back, "Fuck Norwalk, Chivas" and drove toward Rodriguez. Chavez aimed the shotgun at Rodriguez from the car and fired four or five times, killing Rodriguez.

When defendant and Chavez arrived back in Chivas territory, defendant parked and covered the car while Chavez disposed of the gun. Other Chivas members were awaiting their return, and defendant told them he and Chavez had shot someone from Varrio Norwalk.

Defendant was ultimately arrested for the crime and, in an interview with homicide detectives, admitted to driving the car and to knowing Chavez had a shotgun and wanted to retaliate for the earlier shooting of a Chivas member. Defendant, however, denied knowing Chavez actually planned to shoot anyone.

### B. Charges, Trial, and Conviction

Defendant was charged with one count of murder in violation of Penal Code section 187, subdivision (a). The information further alleged a principal was armed with a shotgun in the commission of the offense. A trial jury found defendant guilty of second degree murder. He was sentenced to 16 years to life in prison.

This court affirmed on direct appeal. (*People v. Ramirez, supra*, B071160.) Among other things, the panel rejected defendant's argument that the trial court erred in allowing the prosecutor to misstate the law on principles of aiding and abetting. In resolving that issue, the panel's opinion states the jury was instructed using CALJIC Nos. 3.00 and 3.01, the latter of which specified that a person aids or abets a crime where he or she "with the intent or purpose of committing, encouraging or facilitating the commission of the crime by act or advice, aids,

3

promotes, encourages, or instigates the commission of the crime." (*People v. Ramirez, supra*, B071160.)

### C.    *Defendant's Section 1172.6 Petition*

Defendant filed an in propria persona section 1172.6 petition for resentencing in February 2019. He asserted the prosecution during his murder trial had been allowed to proceed under a theory of felony murder, he had been convicted of second degree murder, and he was not the actual killer.

The People opposed the petition. The People argued defendant was ineligible for section 1172.6 relief because he was a direct aider and abettor who acted with the intent to assist his fellow gang member in the murder of an enemy gang member. The People also emphasized defendant was not prosecuted under either a felony murder or a natural and probable consequences theory of guilt.

Defendant—this time represented by counsel—filed a new section 1172.6 petition for resentencing in April 2021.[3] The petition claimed that the information filed against him allowed the prosecution to rely on the natural and probable consequences doctrine to prosecute him for murder, that he was convicted under that doctrine, and that he could not now be convicted of second degree murder because of the changes made to sections 188 and 189. Defendant further asserted he made a prima facie case for relief under section 1172.6 because he was not the actual

---

[3]    The petition attached record materials including the criminal complaint and felony information, a transcript of defendant's interview with the police, the aiding and abetting jury instructions referenced in this court's prior opinion, and a copy of this court's opinion on direct appeal.

4

killer, did not aid and abet Chavez in the killing, and did not display reckless indifference to human life.

The trial court held a hearing on the petition and asked both sides if they agreed on the following facts: (1) defendant was not the actual shooter in the case; (2) defendant was not convicted on a felony murder or natural and probable consequences theory; and (3) the appellate court deciding defendant's direct appeal found the prosecutor's argument regarding the meaning of aiding and abetting permissible. After some discussion, both parties agreed to all three facts. Defendant backtracked later in the hearing, however, and maintained he was convicted under the natural and probable consequences theory of murder.[4]

The trial court denied the petition and found defendant had not established a prima facie case for relief. The court opined it was "pretty clear" defendant was not the actual shooter, but the court found he was not convicted pursuant to the felony murder rule or the natural and probable consequences doctrine either. Rather, the court found defendant was convicted as a direct aider and abettor.

Defendant now appeals the trial court's ruling. We grant the Attorney General's request to judicially notice the instructions given to the jury at defendant's trial, but we decline to judicially notice the entire record before this court on defendant's direct appeal of his conviction. (Evid. Code, §§ 452, 459, subd. (a); see *People v. Vizcarra* (2015) 236 Cal.App.4th 422, 426, fn. 1.)

---

[4]     It remained undisputed, however, that defendant was not prosecuted on a felony murder theory.

## II. DISCUSSION

Arriving at the correct result here under applicable law is straightforward. A petitioner whose trial jury is not instructed on murder liability pursuant to the natural and probable consequences doctrine or the felony murder rule cannot, as a matter of law, demonstrate he or she is eligible for section 1172.6 relief.[5] (*People v. Soto* (2020) 51 Cal.App.5th 1043, 1055; *People v. Smith* (2020) 49 Cal.App.5th 85, 92, fn. 5, review granted July 22, 2020, S262835.) Our review of the instructions given to defendant's jury confirms the jury was not instructed on either the natural and probable consequences doctrine or the felony murder rule. Defendant is thus ineligible for relief, and the trial court did not err in denying defendant's section 1172.6 petition.

Defendant does not really argue otherwise. Instead, defendant attacks the trial court's finding that he was a direct aider and abettor because he believes the trial evidence is insufficient to establish he had the intent to kill and because, in his view, the prosecutor's closing argument concerning his intent is inconsistent with governing law on aiding and abetting. (Defendant does not contend, however, that the aiding and abetting instructions given to the jury at trial were incorrect.) Insofar as these points were not already raised on direct appeal (and we believe in significant part they were), the time for making such an argument has long since passed. Section 1172.6 is not a mechanism to relitigate claims that were, or could have been, raised on direct appeal. (§ 1172.6, subd. (a) [authorizing

---

[5]     There is no claim here that defendant could have been convicted pursuant to some other theory by which malice would be imputed to him based solely on his participation in the crime.

6

relief for those defendants who "could not presently be convicted of murder or attempted murder *because of changes to Section 188 or 189 made effective January 1, 2019*"], italics added.)

## DISPOSITION

The trial court's order is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

BAKER, J.

We concur:

RUBIN, P. J.

MOOR, J.

7